UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES CONWAY, *et al*,                    Case No. 13-10271

        Plaintiffs,                    Linda V. Parker
v.                                          United States District Judge

BRAD PURVES, *et al*,                       Stephanie Dawkins Davis
                                            United States Magistrate Judge

        Defendants.
_____/

## REPORT AND RECOMMENDATION RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. 114) and PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. 115)

Plaintiffs filed this prisoner civil rights action against a variety of prison official defendants on January 22, 2013. (Dkt. 1). This matter was referred to the undersigned for all pretrial proceedings. (Dkt. 125).[1] Defendants filed a motion for summary judgment. (Dkt. 114). Plaintiffs filed their own motion for partial summary judgment, as well as a response to defendants' motion. (Dkt. 115, 133). Defendants filed a response to plaintiffs' motion and plaintiff filed a reply brief in further support of their motion. (Dkt. 133, 134). The parties submitted a Joint Statement of Unresolved Issues, in which they indicated to the Court that they were unable to narrow the disputed issues. (Dkt. 136). A hearing on these cross

---

[1] Originally referred to Magistrate Judge Paul Komives on April 4, 2013, (Dkt. 11), this matter was reassigned to Magistrate Judge Michael Hluchaniuk on February 5, 2015, (Dkt. 102) and ultimately to the undersigned on January 7, 2016. (Dkt. 125).

1

motions was held on June 7, 2016.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motion for summary judgment (Dkt. 114) be **GRANTED in part** and **DENIED in part** and that plaintiffs' motion for partial summary judgment be **DENIED.**

## II.   FACTUAL BACKGROUND

Plaintiffs were inmates incarcerated by the Michigan Department of Corrections (MDOC) in 2011 and 2012.  In adherence with their Islamic faith, plaintiffs observe Ramadan, which, among other things, requires fasting from dawn until sunset.   As such, Muslims observing Ramadan may consume food and drink only from sunset until dawn.  Plaintiffs allege they were unconstitutionally denied their right to adequate nutrition during their observance of Ramadan in 2011 and 2012. (Dkt. 133).

Defendants are current or former MDOC employees.  In 2011 and 2012, defendant Heyns was the Director of the MDOC.  Defendant Straub was the Deputy Director of Correctional Facilities Administration for MDOC.  Defendant Purves was the Food Service Director for MDOC.  Defendant Rapelje was the Warden of the Saginaw Correctional Facility (SRF).  Defendant Spaulding was the Food Service Director at SRF.  Defendant Kusey is the current Food Service Director at SRF.  Defendant Larson was the Warden at the Newberry Correctional

2

Facility (NCF) where defendant Perry is now its current Warden.  Defendant Bauman is the Warden at the Alger Correctional Facility (LMF).  Defendant Riccardi is the Food Service Director at LMF.  Defendant Birkett was the Warden of the Central Michigan Correctional Facility (STF).  (Dkt. 114).

The parties do not dispute that the average daily calories provided to Muslim inmates by the MDOC Ramadan menu in 2011 was 1,803, and that the average daily calories provided by the 2012 Ramadan menu was 1,756.  (Dkt. 114-11, 114-12, 119-1, 119-2).  Nor do the parties dispute that the "The Dietary Guidelines for Americans," referenced in the MDOC Offender Meals Policy Directive recommends that moderately active men in their thirties and forties (at the relevant times, the plaintiffs' ages ranged between 32 and 49 years of age) take in 2,400-2,600 calories per day.  (Dkt. 118).

Plaintiff Conway was incarcerated at SRF from 2010 to 2013.  (Dkt. 114). He alleges that the meals he received during Ramadan in 2011 and 2012[2] provided substantially fewer calories than those required to maintain minimum nutritional standards.  (Dkt. 117).  He further alleges that the meals delivered to him during Ramadan contained much less food than what was set forth on the Ramadan menu, resulting in a daily ration that was less than half of the food other inmates received

---

[2]Ramadan 2011 ran from August 1 to August 29.  Ramadan 2012 ran from July 20 to August 18.

during that time. (*Id.*).  Plaintiff Conway also alleges that he received his morning meal after sunrise at least 14-16 times during Ramadan 2011 and 2012. (*Id.*). Because that food was delivered outside of the time strictures of Ramadan observance, he did not eat the morning meal and only ate the evening meal on those days.  (*Id.*).   He alleges that, as a result of receiving so little food during Ramadan 2011 and 2012,  he suffered hunger pains, headaches and extreme weight loss (at least 11 pounds during Ramadan 2012). (*Id.*).

Plaintiff Brown has been incarcerated at LMF since June 13, 2011.  He likewise alleges that his 2011 and 2012 Ramadan meals did not contain enough calories to maintain adequate nutrition.  (Dkt. 32).  He also alleges that his bagged meals were missing some of the Ramadan menu items, and that he experienced hunger pains, headaches, dizziness and shakiness. (Dkt. 117-2).

Plaintiff Hudson was incarcerated at STF during Ramadan 2012.[3]  Plaintiff Hudson alleges that his 2012 Ramadan meals provided insufficient caloric content and, thus, inadequate nutrition.  (Dkt. 32).  He alleges that he received less than half of the amount of food that other inmates received during the same period, specifically, less than 900 calories a day.  (Dkt. 117-1).  Plaintiff Hudson alleged suffering from hunger, fatigue, drowsiness, and extreme weight loss of

---

[3]Plaintiffs Hudson and Rodriguez concede that their claims regarding Ramadan 2012 are the only ones for which they exhausted their administrative remedies under PLRA, 42 U.S.C. §1997e.

approximately 12 pounds. (*Id*.)

Plaintiff Rodriguez was incarcerated at SRF during Ramadan 2012.  He also claims his Ramadan meals provided fewer calories than were necessary to maintain adequate nutrition. (Dkt. 32).   He alleges that he suffered from hunger pains, dizziness, light-headedness, headaches and extreme weight loss of 15-20 pounds during Ramadan 2012 as a result. (Dkt. 117-3).

## III.   PARTIES' ARGUMENTS

Plaintiffs' Second Amended Complaint alleges that defendants violated the plaintiffs' rights under the First, Eighth and Fourteenth Amendments, as well as their rights under the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA). (Dkt. 32).  Plaintiff's initially requested injunctive and declaratory relief, as well as money damages.  However, the MDOC purportedly adjusted its Ramadan menus to comply with the district court for the Western District of Michigan's order[4] mandating Ramadan meals of at least 2,350 calories going forward, and the parties stipulated to an order dismissing the claims for injunctive and declaratory relief as moot.  (Dkt. 32, 113).  Plaintiffs' claims for money damages for failure to provide sufficient calories during Ramadan 2011 and 2012 are the only remaining subject of the parties' cross motions for summary

---

[4]*Heard v. Finco*, 13-373, Order of Clarification, (WD Mich., July 10, 2013)(Dkt. 122-5).

judgment.

### A.      Exhaustion of Administrative Remedies under the PLRA

In their briefing, defendants argue that plaintiffs' claims must be at least partially dismissed without prejudice because they have failed to exhaust their administrative remedies required by the Prisoner Litigation Reform Act (PLRA). Defendants note that exhaustion of administrative remedies is a prerequisite to filing a prisoner lawsuit challenging prison conditions.  42 U.S.C. §1997e(a). Citing *Woodford v. Ngo*, 548 U.S. 81 (2006), defendants argue that the statute requires "proper" exhaustion, meaning plaintiff prisoners must complete the administrative review process.  Defendants further assert that it is the prison's requirements, not the PLRA itself, that define the contours of proper exhaustion, *Jones v. Bock*, 549 U.S. 199, 218 (2007), and that MDOC Policy Directive (PD) 03.02.130, ¶R requires prisoners to give dates, times, places and the names of those involved in the issue being grieved.

Defendants acknowledge that plaintiffs Conway and Brown filed grievances through Step III in 2011 and 2012, and that plaintiffs Hudson and Rodriguez filed grievances through Step III in 2012,[5] but argue that these grievances do not exhaust their remedies because they do not specifically identify all of the

---

[5]Plaintiffs Hudson and Rodriguez concede they did not file grievances through Step III regarding Ramadan meals in 2011. (Dkt. 133).

6

defendants by name and because the Second Amended Complaint does not specifically refer to Plaintiffs Conway and Brown's grievances made in both 2011 and 2012.[6]

Defendants argue that plaintiff Conway named only defendant Spaulding at Step III, meaning that his claims against all other defendants must be dismissed without prejudice for failure to exhaust administrative remedies against all the defendants other than defendant Spaulding.  Defendants likewise argue that plaintiff Brown named only defendants Riccardi and Bauman in his grievances and thus, his claims against all other defendants should be dismissed for failure to exhaust administrative remedies.   Plaintiff Hudson's grievance names only defendant Birkett and Plaintiff Rodriguez's grievance names only defendants Purves, Kusey and Rapelje; accordingly, defendants argue that since plaintiffs did not name defendants Heyns, Straub, Larson or Perry in their grievances, their administrative remedies against these defendants have not been exhausted and thus their claims against these defendants must be dismissed without prejudice. Moreover, defendants argue that none of the plaintiffs' grievances reference the want of halal meals and thus plaintiffs' claims relating to halal meals must also be

---

[6]Defendants argue that the Second Amended Complaint did not specifically cite to grievances Plaintiff Conway made in 2012 or to grievances Plaintiff Brown made in 2011; they do not argue that those plaintiffs did not file grievances to Step III in both years. (Dkt. 114).

dismissed without prejudice.

Plaintiffs argue in their briefs that the Second Amended Complaint characterizes defendants' violations as ongoing and that Plaintiffs are thus not required to specifically plead each year separately. Moreover, relying on *Jones v. Bock*, 549 U.S. at 216, plaintiffs argue that the failure to exhaust administrative remedies is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints. Plaintiffs further rely on *Jones'* denouncement of the "name all defendants" requirement to refute defendants' position that plaintiffs were required to individually name each defendant in their grievances in order to properly exhaust their administrative remedies against them and satisfy this prerequisite to filing suit. (Dkt. 133). Plaintiffs' briefs do not address defendants' argument that plaintiffs have failed to exhaust their administrative remedies relative to the failure to provide halal food claims. However, as discussed more fully below, plaintiffs' counsel conceded abandonment of the issue during oral argument on the motion.

## B.    Qualified Immunity

Defendants argue that they are entitled to qualified immunity for their alleged violations of plaintiffs' First, Eighth and Fourteenth Amendment rights. (Dkt. 114). Defendants cite *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), arguing that government officials acting within the scope of their authority are

8

entitled to qualified immunity as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Defendants argue that the contours of any of plaintiffs' rights that were allegedly violated were not sufficiently clear such that a reasonable official would understand that his or her actions were violative. *Saucier v. Katz,* 533 U.S. 194, 202 (2001); *Pearson v. Callahan*, 555 U.S. 223 (2009). Defendants acknowledge that officials can still be on notice that their conduct violates clearly established law in novel factual circumstances, *Sutton v. Metropolitan Government of Nashville*, 700 F. 3d 865, 876 (6th Cir. 2012), but note that existing precedent must have put the constitutional question beyond debate. *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011).

### 1.    First Amendment

Defendants acknowledge that the Sixth Circuit recently ruled that Muslim prisoners have a clearly established right to adequate nutrition during Ramadan. *Welch v. Spaulding*, 627 Fed.App'x 479, 483 (6th Cir. 2015). However, defendants note that the court in *Welch* declined to define nutritional adequacy in the First Amendment context in terms of specific daily caloric requirements, and argues that this case is distinguishable from *Welch* because, at worst, defendants here provided plaintiffs with 1,700-1,800 calories per day, or 12,000 more calories during the 30 day period of Ramadan than the plaintiff in *Welch* received. (Dkt.

124).  Defendants further argue that as an unpublished case *Welch* is not binding

precedent on this Court. (*Id.*)  Finally, defendants argue that in 2011 and 2012 they

were  justified in believing that providing between 1,700 and 1,800 calories for

thirty days would not be a constitutional violation based upon the ruling in *Colvin*

*v. Caruso*, 605 F.3d 282, 299-300 (6th Cir. 2010).  According to defendants, the

Sixth Circuit held in *Colvin* that a prison chaplain was entitled to qualified

immunity to the claimed violation when he provided non-kosher meals to the

plaintiff for 16 days in a row, thus limiting the plaintiff, who adhered to the dietary

restrictions of the Jewish faith, to eating only fruit that entire time.  (Dkt. 124).

Defendants argue that, based on *Colvin*, where the court granted  qualified

immunity despite the prisoner having eaten only fruit for 16 consecutive days, they

could not have known that their actions were unconstitutional.  (*Id.*).  Defendants

also argue that because their conduct did not violate any clearly established law

under the Eighth Amendment's ban on cruel and unusual punishment, it could not

have impacted plaintiffs' First Amendment rights to freely exercise their religion.

(*Id.*).

　　　In contrast, plaintiffs argue that *Welch* is not distinguishable from the case

at bar and dictates that defendants are not entitled to qualified immunity. (Dkt.

133).  Plaintiffs contend that *Welch* stands for the proposition that if a plaintiff

offers sufficient evidence that he suffered adverse effects (from receiving fewer

calories), the administering prison officials are not entitled to qualified immunity. (*Id.*).  Plaintiffs further assert that if a plaintiff can provide evidence that he was tempted to break his fast due to hunger and discomfort, then he establishes that the prison officials have substantially burdened his religious exercise and violated his First Amendment rights. (*Id.*).  Plaintiffs argue they have met this standard and that defendants are thus not entitled to qualified immunity for the violation of their First Amendment rights. (*Id.*).

## 2.    Eighth Amendment

Defendants, citing *Cunningham v. Jones*, 567 F.2d 653 (6th Cir. 1977)(*Cunningham I*) and *Cunningham v. Jones*, 667 F.2d 565 (6th Cir. 1982)(*Cunningham II*) argue that if a prisoner's diet is sufficient to sustain the prisoner in good health, his Eighth Amendment right to be free from cruel and unusual punishment has not been violated.  Similar to their arguments relative to plaintiffs' First Amendment claims, defendants argue that, given the state of the law in 2011 and 2012, it was reasonable for defendants to believe that a daily intake of 1,700 to 1,800 calories was sufficient to sustain a prisoner in good health.  Hence, defendants assert that they are entitled to qualified immunity and thus summary judgment in their favor on plaintiffs' Eighth Amendment claims.

Plaintiffs counter that the Eighth Amendment is violated by the deliberate and unnecessary withholding of food essential to normal health, citing

*Cunningham I.*  Relying on *Cunningham I*, plaintiffs argue further that once a plaintiff supplies evidence establishing a substantial deprivation of food normally served, the burden of proof as to the adequacy of the meals to sustain normal health shifts to the defendant. (Dkt. 133).  Plaintiffs contend that the MDOC policies mandating 2,600 to 2,800 calories per day for prisoners provides ample evidence that providing plaintiffs only 1,700 to 1,800 calories amounts to a substantial deprivation.  (*Id.*)  Plaintiffs urge that their cataloged hunger-related symptoms, combined with the testimony of MDOC nutritionists that weight loss, illness, malnutrition, hunger pains, and dizziness implicate the health and well-being of a person, and demonstrate a clear violation of plaintiffs' Eighth Amendment rights such that defendants cannot be given qualified immunity.  (Dkt. 133).

### 3.    Fourteenth Amendment/Equal Protection Clause

Defendants argue that to prevail on their equal protection claim, plaintiffs must demonstrate that the defendants' conduct constituted disparate treatment of similarly situated individuals and that such disparate treatment was the result of intentional discrimination. (Dkt. 114).  According to defendants, plaintiffs' claims do not establish a violation of the equal protection clause.  (*Id.*)  Defendants argue that plaintiffs fail to provide any evidence of other prisoners who engage in a month-long fast, and thus they have failed to demonstrate disparate treatment of

similarly situated individuals. (*Id.*)  Defendants also rely upon the recent Sixth

Circuit ruling in *Robinson v. Jackson*, 615 Fed.App'x 310 (6th Cir. 2015), which

held that the prison officials' failure to provide halal meals to Muslim prisoners

did not violate their rights under the equal protection clause because plaintiffs

failed to allege that the refusal to serve halal meals was based on discriminatory

intent.  Defendants assert that plaintiffs provide no evidence that defendants'

actions were motivated by purposeful discrimination and thus their Fourteenth

Amendment claims fail.

Plaintiffs argue they are indeed similarly situated to other prisoners, in that

they all depend entirely upon the MDOC to provide them with adequately

nutritious meals. (Dkt. 133). Furthermore, plaintiffs assert that defendants'

responses to plaintiffs' grievances supply evidence of defendants' discriminatory

intent by clearly indicating that plaintiffs had been refused the same nutritional

content provided to the general prison population because of their religious

fasting.  (*Id.*).  Plaintiffs argue this evidence precludes application of qualified

immunity and summary judgment in favor of defendants.

### C.   RLUIPA Claims

Defendants argue that this Court previously ruled that plaintiffs could not

maintain their RLUIPA claim against defendants and that, because plaintiffs never

objected to that order (Dkt. 31), it is now the law of the case and precludes

plaintiffs recovery under the RLUIPA.  (Dkt. 114).  Defendants further argue,

citing *Haight v. Thompson*, 763 F.3d 554, 570 (6th Cir. 2014), that RLUIPA does

not permit money damages against state prison officials, even when they are sued

in their individual capacities.  According to defendants, no viable RLUIPA claim

remains because plaintiffs have voluntarily dismissed their claims for injunctive

and declaratory relief. (Dkt. 114).

    In their briefing, plaintiffs counter by indicating that they seek only

attorneys' fees and costs, and not other money damages, under RLUIPA. (Dkt.

133).  Plaintiffs argue that attorneys fees may be awarded to a prevailing party in a

civil suit pursuant to 42 U.S.C. §1988.  Plaintiffs do not explicitly argue that they

are prevailing parties under RLUIPA.  Instead they contend that an award of costs

is within the discretion of the court and that defendants do not contest plaintiffs'

rights to attorneys fees and costs under 42 U.S.C. §1988. (Dkt. 133).

    **D.    Eleventh Amendment Immunity**

    Defendants also argue that the Eleventh Amendment provides immunity to

money damage claims for state officials sued in their official capacities.  (Dkt.

114).  Defendants note that defendants Heyns and Straub are sued only in their

official capacity and that defendants Purves, Rapelje, Kusey, Perry, Bauman and

Riccardi were named in their official and individual capacities.  (*Id*).  Defendants

urge that, because plaintiffs dismissed their injunctive and declaratory relief

14

claims, the claims against defendants Heyns and Straub should be dismissed with prejudice in their entirety.

Plaintiffs respond to this argument in their briefs by noting that they are entitled to money damages from the defendants sued individually. (Dkt. 133).

### E.      Arguments at June 7, 2016 Hearing

During the hearing conducted by the Court on the parties' motions, counsel for plaintiffs conceded that a change in MDOC Ramadan policy had rendered its claims for injunctive and declaratory relief moot. As a result, they agreed that dismissal of Counts II and III (RLUIPA claims), as well as defendants Heyns and Straub (named only in their official capacity), is appropriate. Additionally, plaintiffs agreed that defendants Larson and Perry's lack of involvement with these plaintiffs and the facilities in which they were incarcerated during the relevant time period justifies their dismissal from the action also. Finally, plaintiffs agreed that their claims regarding the absence of halal meals was not ripe for adjudication because plaintiffs had not exhausted their administrative remedies regarding this issue.

## IV.   ANALYSIS AND CONCLUSIONS

### A.      Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law." Fed.R.Civ.P. 56(a).  A moving party may meet that burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1).

When the moving party has met its burden under rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, id. at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

Although a moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden-the plaintiff on a claim for relief or the defendant on an affirmative defense-his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.1986) (quoting W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 James William Moore, et al., Moore's Federal Practice § 56.13[1], at 56-138 (3d ed.2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553, 119 S.Ct. 1545, 143 L.Ed.2d 731

17

(1999).

### B.    Exhaustion of Administrative Remedies

As noted above, plaintiffs have conceded that they did not exhaust their administrative remedies relative to their claims over the absence of a halal menu. Therefore these claims should be dismissed without prejudice.  Additionally, plaintiffs agreed that defendants Heyns, Straub, Larson and Perry should be dismissed from this action.  These same defendants are the only ones seeking dismissal for failure to exhaust administrative remedies. (Dkt. 114).  Accordingly, because these defendants are to be dismissed on other grounds, the controversy over whether plaintiffs have exhausted their administrative remedies against these defendants is moot.

### C.    Qualified Immunity

Government officials are typically immune from civil liability under 42 U.S.C. §1983, and may assert qualified immunity as an affirmative defense to claims against them under that statute.  *Welch v. Spaulding*, 627 Fed.App'x 479, 482 (6th Cir. 2015).  Plaintiffs may establish that those officials are not entitled to immunity by demonstrating that the allegations give rise to a constitutional violation and the right violated was clearly established at the time of the incident. *Plumhoff v. Rickard,*___ U.S. ____, 134 S.Ct. 2012, 2023, 188 L.Ed.2d 1056 (2014).  For a right to be clearly established, the contours of the right must be

sufficiently clear that a reasonable government official would understand that what he is doing violates that right. *Colvin v. Caruso*, 605 F.3d 282, 290 (6th Cir. 2010). Courts are "not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances he or she faced." *Plumhoff*, 134 S.Ct. at 2023.

### 1.     First Amendment Claims

As noted by the parties, the Sixth Circuit recently held that a 1,300 calorie per day diet for a 30 day period (Ramadan 2011) established a genuine issue of fact as to whether the prisoner's diet was so lacking as to violate the clearly established right to adequate nutrition during Ramadan and thus defeated the prison officials' claim of qualified immunity. *Welch*, 627 Fed.App'x at 483. Indeed, according to *Welch*, it is clearly established as a matter of law that a prison must provide adequate nutrition to prisoners, despite religious restrictions. *Id*. at 484.

Defendants argue that *Welch* is distinguishable from the case at bar because the Ramadan menu at issue here provided 400 to 500 more calories per day than the one at issue in *Welch*. But the court in *Welch* explicitly declined to define nutritional adequacy in terms of specific daily caloric requirements, finding instead that whether a prison official has knowingly provided a nutritionally

19

inadequate diet is a fact-specific inquiry that requires consideration of, *inter alia*, daily caloric content, duration of the diet, and the nutritional needs of the prisoner. *Id*. at 483. Moreover, defendants' argument ignores plaintiffs' allegations that they routinely received meals that were missing some of the listed menu items or received meals outside the time they were permitted to eat and thus plaintiffs were actually provided with far fewer than the 1,700 to 1,800 calories provided under the MDOC Ramadan menu. Consequently, the number of calories provided by the Ramadan menu in this case is not dispositive.

Defendants also argue that the contours of the right to adequate nutrition during Ramadan were not sufficiently clear in 2011 and 2012 for them to know that 1,700 to 1,800 calories per day would not be constitutionally sufficient. Defendants rely on *Colvin*, a 2010 Sixth Circuit case in which a prison chaplain was granted qualified immunity despite denying a prisoner kosher meals, which resulted in restricting him to only fruit for 16 consecutive days. *Colvin*, 605 F.3d at 290. Defendants in *Welch* made the same argument. Yet, the court in *Welch* concluded that the defendant in *Colvin* retained qualified immunity because, as emphasized by that court, he denied the prisoner kosher meals without apparent knowledge of the mistake and took immediate remedial steps to provide nutritious kosher meals once the mistake was discovered. *Welch*, 627 Fed.App'x at 484. Because the defendants in *Welch* took no remedial action after plaintiff

20

complained about the inadequacy of the meals, the court determined they were not entitled to the qualified immunity retained by the defendant in *Colvin*. *Id*. (citing *Carter v. Washington Dep't of Corr.*, 2013 WL 1090753 (W.D.Wash., Feb. 27, 2013)(no constitutional violation because prison officials "corrected the caloric values of the Ramadan meals and when that was still insufficient, they added supplements to the meals to ensure that the goal of 2,700 average calories was met."). Additionally, the *Welch* court noted the significance of the *Colvin* plaintiff enduring nutritional deprivation for only 16 days, as compared to the 30 day period of reduced rations suffered by the plaintiff in that case. *Id*.

The facts of the instant case more closely mirror those in *Welch* in that the defendants here took no remedial action to address plaintiffs' complaints about the inadequacy of the meals. To the contrary, defendants responded to the complaints with an explanation that a reduction in daily caloric intake was inherent to the practice of fasting in observance of Ramadan. (Dkt. 120, 120-1, 120-2). Plaintiffs here, like Welch, also endured the deprivation for a full 30 days. Accordingly, defendants here cannot avail themselves of the mitigating circumstances which permitted the *Colvin* defendant to receive qualified immunity. Like their counterpart in *Welch*, plaintiffs have supplied allegations, which, if accepted by a jury, give rise to a First Amendment violation and thus, may not be dismissed by way of summary judgment.

21

Neither does the plaintiffs' argument for summary judgement on this count carry the day. As discussed, plaintiffs carry the burden of persuasion on their First Amendment violation claims, and it cannot be said that the evidence supplied by plaintiffs is so powerful that no reasonable jury would be free to disbelieve it. Thus, summary judgment for the plaintiffs is also inappropriate.

### 2. Eighth Amendment Claims

A diet consisting of 1,000 to 1,500 calories per day can violate a prisoner's clearly established right to a nutritionally adequate diet. *Heard v. Finco*, 14-2195, at 4 (6th Cir., Dec. 21, 2015)(citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) and *Welch*, 627 Fed.App'x at 483-84); *Cunningham I*, 567 F.2d at 660 (the deliberate and unnecessary withholding of food essential to normal health violates the Eighth Amendment). Allegations of insufficient calories causing dizziness, weakness, dehydration, hunger pains and weight loss "establish a genuine issue of material fact regarding whether the prisoners' restricted diets during the Ramadan fasts violated a clearly established right of which a reasonable officer would have known" and thus preclude qualified immunity for prison officials. *Heard*, 14-2195, at 4. Accordingly, defendants are not entitled to qualified immunity, and summary judgment of plaintiffs' Eighth Amendment claims should be denied. As with their First Amendment claim, plaintiffs have not satisfied the burden of persuasion such that summary judgment can be awarded to them on their Eighth

22

Amendment claims.

### 3.    Equal Protection Claims

The Equal Protection Clause provides that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV § 1. It is in essence "a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). To prevail on an equal protection claim, plaintiffs must demonstrate that MDOC's provision of inadequate Ramadan meals to them constitutes disparate treatment of similarly-situated individuals. *Robinson v. Jackson*, 615 F. App'x 310, 314-15 (6th Cir. 2015), citing *Abdullah v. Fard*, 173 F.3d 854 (6th Cir. 1999). They must further prove that the disparate treatment in question is the result of intentional and purposeful discrimination. *Id*.

Disparate treatment in this context does not require "exact correlation" when evaluating whether parties are similarly situated, but it does require "relevant similarity." *Ryan v. City of Detroit,* 2016 WL 1238780, at *8-9 (E.D. Mich. Mar. 30, 2016)(citing *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012)).  Although the "similarly situated" determination is often an issue of fact for the jury, a district court may grant summary judgment "where it is clear that no reasonable jury could find that the similarly situated requirement has been met." *Id*.(quoting Fares *Pawn, LLC v. Indiana Dep't of Fin. Insts*., 755 F.3d 839,

846 (7th Cir. 2014)). Indeed, the "similarly situated" analysis must be applied with "rigor" to maintain the Equal Protection Clause's "focus on discrimination" and to avoid "constitutionalizing" every encounter with a state actor. *Id.*(quoting *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1207 (11th Cir.2007)).  For its part, the Sixth Circuit does not hesitate to affirm a grant of summary judgment where a plaintiff fails to identify other similarly situated individuals. See, e.g., *Dixon v. Univ. of Toledo*, 702 F.3d 269, 279 (6th Cir.2012); *EJS Props., L.L.C. v. City of Toledo*, 698 F.3d 845, 865–866 (6th Cir.2012); *Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 987 (6th Cir.2012).

Notably, several districts within the circuit have dismissed Equal Protection claims similar to those articulated here on summary judgment for failure to meet the similarly situated requirement. *See Green v. Tudor*, 685 F.Supp.2d 678, 694-95 (W.D. Mich. 2010)(plaintiff's equal protection claim failed because he did not present evidence that defendant supplied prisoners of other faiths with hot meals during non-daylight hours); *see also, Arnold v. Heyns*, 2014  WL 2864382, *3 (E.D. Mich., June 24, 2014)(prisoners being served meat and cheese are not similar to plaintiffs because those prisoners presumably do not maintain beliefs demanding special handling or consumption of such items).

Plaintiffs do not identify any individuals similarly-situated in context, i.e., inmates receiving a special religious diet or a menu consisting of only two meals

24

per day.  Instead, plaintiffs posit that the similarly-situated individuals are the general prison population because they all rely upon MDOC for their sustenance. (Dkt. 133).  Of course, the general prison population cannot be similarly-situated in this context because its members do not require special meals to accommodate their religious observances. *See Arnold*, 2014 WL 2864382 at *3; *see also, Green*, 685 F.Supp.2d at 694-95.

Even assuming plaintiffs could establish the existence of similarly-situated individuals who were receiving disparate treatment, they fail to allege that the MDOC is providing inadequate Ramadan meals pursuant to intentional or purposeful discrimination.  See *Abdullah*, 173 F.3d at 854.  Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious protected-class discrimination. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265, 97 S. Ct. 555, 563, 50 L. Ed. 2d 450 (1977).  Rather, proof of discriminatory purpose is required to show a violation of the Equal Protection Clause.  *Id*.  But discriminatory purpose implies more than intent as volition or intent as awareness of consequences.  It implies that the decision maker selected or reaffirmed a particular course of action at least in part *because of*, not merely in spite of, its adverse effects upon an identifiable group. *McCleskey v. Kemp*, 481 U.S. 279, 298, 107 S. Ct. 1756, 1770, 95 L. Ed. 2d 262 (1987).  In other words, to establish intentional discrimination, plaintiffs must

show that the state official acted with the purpose of creating an adverse impact on an identifiable group—not simply with an awareness that adverse consequences would result from the state action. *Ryan*, 2016 WL 1238780, at *4; *see also, Columbus Bd. of Educ. v. Penick*, 443 U.S. 449, 464, 99 S.Ct. 2941, 61 L.Ed.2d 666 (1979)("Disparate impact and foreseeable consequences, without more, do not establish a constitutional violation.").

A plaintiff's burden of demonstrating that defendants purposefully discriminated against him or her "is a heavy one to satisfy," and requires "a sensitive inquiry into such circumstantial and direct evidence of intent as may be available. " *Ryan,* 2016 WL 1238780, at *4(quoting *Sampson v. Town of Salisbury*, 441 F.Supp.2d 271, 279 (D.Mass.2006) and *Rogers v. Lodge*, 458 U.S. 613, 618, 102 S.Ct. 3272, 73 L.Ed.2d 1012 (1982)).

The only evidence of defendants' discriminatory intent cited by plaintiffs is defendants' responses to plaintiffs' grievances regarding the Ramadan menu. In those responses, defendants justify plaintiffs' reduced caloric intake as a natural consequence of abstaining from meals during Ramadan. (Dkt. 120, 120-2). In other words, defendants' responses acknowledge that the MDOC policy of providing prisoners observing Ramadan with two meals (instead of three) outside of daylight hours resulted in their consumption of fewer calories. The defendants' responses provide evidence only that they were aware that their accommodation of

26

Muslim prisoners' observation of Ramadan provided them with fewer calories than were provided to the general population.  They do not, however, provide evidence that the MDOC designed the Ramadan menus in question *in order to* deprive Muslim prisoners of calories.  *See e.g., Abdullah*, 173 F.3d at *2(prison system's reasonable attempt to make accommodations for the practice of the Muslim religion belies a finding that the policy was motivated by discriminatory intent).   Plaintiffs have failed to demonstrate anything more than the defendants' awareness of adverse consequences of the 2011 and 2012 MDOC Ramadan menus.  Hence, plaintiffs have not established a valid equal protection claim and summary judgment in favor of defendants is appropriate for this claim.

### D.    RLUIPA Claims

As noted *supra*, counsel for plaintiffs conceded that a change in MDOC Ramadan policy had rendered its claims for injunctive and declaratory relief moot and, hence, the dismissal of their RLUIPA claims is appropriate.

### E.    Eleventh Amendment

Again, as counsel for plaintiffs conceded at the hearing, defendants Heyns and Straub should be dismissed from this suit, and the claims against defendants Purves, Rapelje, Kusey, Bauman and Riccardi may proceed against them only in their individual capacities.

## V.    RECOMMENDATION

27

For the above-stated reasons, the undersigned recommends that defendants' motion for summary judgment (Dkt. 114) should be **GRANTED IN PART** and **DENIED IN PART** and  makes the following **RECOMMENDATIONS**:

The Court **RECOMMENDS** that defendants Heyns, Straub, Larson and Perry be **DISMISSED WITH PREJUDICE**. Claims against defendants Purves, Rapelje, Kusey, Bauman and Riccardi[7] may proceed against them only in their individual capacities.

The Court **RECOMMENDS** that Counts II, III and V of plaintiffs' Second Amended Complaint be **DISMISSED WITH PREJUDICE**.

The Court **RECOMMENDS** that all claims relating to the denial of halal meals to plaintiffs be **DISMISSED WITHOUT PREJUDICE**.

The undersigned further **RECOMMENDS** that plaintiffs' motion for partial summary judgment be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

---

[7]Claims may also proceed against defendants Spaulding and Birkett, who were named only in their individual capacities. (Dkt. 32).

28

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 1, 2016                               s/Stephanie Dawkins Davis
                                                   Stephanie Dawkins Davis
                                                   United States Magistrate Judge

29

## CERTIFICATE OF SERVICE

I certify that on August 1, 2016, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov